**U.S. Department of Justice**

Environment and Natural Resources Division

gnd
198-01410

*Environmental Crimes Section*
*P.O. Box 7611*
*Washington, DC 20044*

*Telephone (202) 305-0338*
*Facsimile (202) 514-8865*

September 8, 2016

John Brownlee, Esq.
Holland & Knight
800 17th Street, NW
Washington, DC 20006
(202) 824-1854
(202) 309-722 (mobile)
john.brownlee@hklaw.com

**Re: United States v. Legacy Seafoods, Inc.**

Dear Mr. Brownlee:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts and the Environmental Crimes Section of the U.S. Department of Justice ("the United States") and your client, Legacy Seafoods, Inc. ("Defendant"), in the above-referenced case. The Agreement is as follows:

1. Change of Plea

At the earliest practicable date, Defendant shall plead guilty to the Information attached to this Agreement charging it with: Misbranding of Food in Interstate Commerce, a Class A misdemeanor in violation of 21 U.S.C. §§ 331(a), (c) and 333(a)(1). Defendant expressly and unequivocally admits that it committed the crime charged in the Information, did so knowingly, and is in fact guilty of that offense.

2. Penalties

Defendant faces the following maximum penalties on Count One of the Information: a term of probation of not more than 5 years; a fine of not more than the greater of twice the gross gain or twice the gross loss; a mandatory special assessment of $125; restitution; and forfeiture to the extent charged in the Information.

3. Sentencing Guidelines

The sentence to be imposed upon Defendant is within the discretion of the District Court ("Court"), subject to the statutory maximum penalties set forth above and the provisions of the Sentencing Reform Act, and the United States Sentencing Guidelines ("USSG" or "Guidelines") promulgated thereunder. The USSG are advisory, not mandatory and, as a result, the Court may impose a sentence up to and including the statutory maximum term of probation and statutory

maximum fine. In imposing the sentence, the Court must consult and take into account the USSG and the other factors set forth in 18 U.S.C. § 3553(a).

The United States expressly reserves the right not to recommend a reduction under USSG § 3E1.1 if, at any time between Defendant's execution of this Agreement and sentencing, Defendant:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit Defendant's conduct in the offense of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(d) Fails to provide truthful information about Defendant's financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(f) Engages in acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG § 3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Agreement; or

(j) Attempts to withdraw Defendant's guilty plea.

Defendant expressly understands that Defendant may not withdraw its plea of guilty if, for any of the reasons listed above, the United States does not recommend that Defendant receive a reduction in offense level for acceptance of responsibility. Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the United States may seek an upward adjustment pursuant to USSG § 3C1.1 if Defendant obstructs justice after the date of this Agreement.

Nothing in this Agreement affects the United States' obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. Sentence Recommendation

The parties agree to recommend the following sentence before the Court:

(a) restitution in the amount of $47,142, which represents one-half the total out-of-pocket loss, of which Defendant agrees to pay $25,000 on or before

the date of sentencing. Defendant contends that it is not able to pay the remaining $22,142, but if the Court nonetheless orders the Defendant to pay, the remaining portion of the agreed-upon restitution of $47,142, the government will request that the Defendant be ordered to pay that amount in scheduled payments throughout the term of probation as recommended by the U.S. Department of Probation and set by the Court;

The United States agrees to recommend the following sentence before the Court:

(a) a term of probation of 3 years;

(b) a fine within the Guidelines sentencing range as calculated by the Court at sentencing, unless the Court finds that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine; and

(c) a mandatory special assessment of $25, which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that the Defendant is unable to do so).

Defendant agrees to provide the United States expert reports, motions, memoranda of law and documentation of any kind on which Defendant intends to rely at sentencing not later than 21 days before sentencing. Any basis for sentencing as to which Defendant has not provided the United States all such items at least 21 days before sentencing shall be deemed waived.

5. <u>Payment of Mandatory Special Assessment</u>

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6. <u>Protection of Assets for Payment of Restitution, Community Service, Forfeiture and Fine</u>

Defendant agrees to pay restitution of $25,000 on or before the date of sentencing, and any additional amount of restitution, if ordered, in its entirety by the conclusion of the 3-year term of probation in installments on dates acceptable to the Court.

Defendant agrees not to transfer, or authorize the transfer of, any asset that has been restrained by Order of the Court in this case or any asset, whether or not restrained, that Defendant has agreed to forfeit pursuant to this Agreement.

Defendant agrees not to transfer, or authorize the transfer of any other asset in which Defendant has an interest without prior express written consent of the United States, except for:

(a) Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $25,000; and

(b) Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Agreement and continue until the fine, forfeiture, community service payment, and restitution ordered by the Court at sentencing is/are satisfied in full.

7. Waiver of Rights to Appeal and to Bring Future Challenge

(a) Defendant has conferred with its attorney and understands that it has the right to challenge both its conviction and its sentence (including any orders relating to supervised release, fines, forfeiture, and restitution) on direct appeal. Defendant also understands that, in some circumstances, Defendant may be able to argue in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. § 3582(c), that Defendant's conviction should be set aside or Defendant's sentence (including any orders relating to supervised release, fines, forfeiture, and restitution) be set aside or reduced.

(b) Defendant waives any right to challenge Defendant's conviction on direct appeal or in a future proceeding (collateral or otherwise).

(c) Defendant agrees not to file a direct appeal or challenge in a future proceeding (collateral or otherwise) any sentence of probation of three years or less or any orders relating to fines, forfeiture, and restitution. This provision is binding even if the Court's Guidelines analysis is different from that set forth in this Plea Agreement.

(d) This Agreement does not affect the rights of the United States as set forth in 18 U.S.C. § 3742(b). Defendant expressly acknowledges that it understands the United States has retained all appeal rights.

(e) Regardless of the previous sub-paragraphs, Defendant reserves the right to claim that Defendant's lawyer rendered ineffective assistance of counsel under *Strickland v. Washington*.

8. Other Post-Sentence Events

(a) If, despite the waiver provision of sub-paragraph 7(c), Defendant appeals or challenges in a future proceeding (collateral or otherwise) Defendant's sentence, the United States reserves the right to argue the correctness of the sentence imposed by the Court, in addition to arguing that any appeal or future challenge (collateral or otherwise) is waived as a result of the waiver in sub-paragraph 7(c).

(b) If, despite the waiver provision of sub-paragraph 6(c), Defendant seeks re-sentencing, Defendant agrees not to seek to be re-sentenced with the benefit of any change to the Criminal History Category that the Court calculated at the time of Defendant's original sentencing, except to the extent that Defendant has been found actually factually innocent of a prior crime.

(c) In the event of a re-sentencing following an appeal from or future challenge (collateral or otherwise) to Defendant's sentence, the United States reserves the right to seek a departure from and a sentence outside the USSG if, and to the extent, necessary to reinstate the sentence the United States advocated at Defendant's initial sentencing pursuant to this Agreement.

9. Court Not Bound by Agreement

The parties' sentencing recommendations and their respective calculations under the USSG are not binding upon the U.S. Probation Office or the Court. Within the maximum sentence Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the Court. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw its plea of guilty regardless of what sentence is imposed, nor because the U.S. Probation Office or the Court declines to follow the parties' USSG calculations or recommendations. Should the Court decline to follow the United States' USSG calculations or recommendations, the United States reserves the right to defend the Court's calculations and sentence in any direct appeal or future challenge (collateral or otherwise).

10. Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

11. Civil Liability

By entering into this Agreement, the United States does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this Agreement.

12. Rejection of Plea by Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on Defendant's motion, this Agreement shall be null and void at the option of the United States.

13. Breach of Agreement

If the United States determines that Defendant has failed to comply with any provision of this Agreement, or has committed any crime following Defendant's execution of this Agreement, the United States may, at its sole option, be released from its commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The United States may also pursue all remedies available to it under the law, regardless whether it elects to be released from its commitments under this Agreement. Further, the United States may pursue any and all charges that have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that its breach of an obligation under this Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea. Defendant further understands that, should it breach any provision of this Agreement, the United States will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements that Defendant may make, and any information, materials, documents or objects that Defendant may provide to the government subsequent to this Agreement, without any limitation. In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

14. Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney's Office for the District of Massachusetts and the Environmental Crimes Section of the U.S. Department of Justice, and cannot and does not bind any other federal, state or local prosecutive authorities.

15. Corporate Authorization

Defendant shall provide to the United States and the Court a certified copy of a resolution of the Board of Directors of Defendant, affirming that the Board of Directors has authority to enter into the Plea Agreement and has (1) reviewed the Information in this case and the proposed Plea Agreement; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Defendant to plead guilty to the charges specified in the Plea Agreement; and (5) voted to authorize Bob Pacitti, President of Legacy Seafoods, Inc., to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement.

Subject to the Court's approval, Defendant agrees that counsel for Defendant, John L. Bownlee of Holland & Knight LLP, will appear on behalf of Defendant and enter the guilty plea and will also appear for the imposition of sentence.

16. Complete Agreement

This letter contains the complete and only agreement between the parties relating to the disposition of this case. No other promises, representations or agreements have been made other than those set forth in this letter. This Agreement can be modified or supplemented only in a written document signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the United States and the Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Trial Attorney Gary Donner.

Very truly yours,

CARMEN M. ORTIZ
United States Attorney
District of Massachusetts

By: ______________________
DAVID TOBIN
Assistant United States Attorney

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

By: ______________________
GARY N. DONNER
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. |
| | ) | |
| v. | ) | Count One: |
| | ) | 21 U.S.C. §§ 331(a) and (c), |
| | ) | 333(a)(1) |
| | ) | Misbranding |
| LEGACY SEAFOODS, INC. | ) | |

## JOINT FACTUAL STATEMENT

The United States Attorney for the District of Massachusetts and the Environmental Crimes Section of the United States Department of Justice (collectively referred to herein as "the government") and the defendant, Legacy Seafoods, Inc. (referred to herein as "Defendant" or "Legacy") agree that this Joint Factual Statement is true and accurate, and provides a joint statement of facts, relevant conduct and stipulations in support of the Defendant's guilty plea in the above-captioned matter to a Criminal Information charging one count of misdemeanor misbranding of codfish, specifically codfish belonging to the species *gadus morhua*, in violation of Title 21, United States Code, Sections 331(a) and (c), and 333(a)(1). The Defendant agrees that, had this matter proceeded to trial, the government would have proven, beyond a reasonable doubt, the charge set forth in the Criminal Information and the facts contained in this Joint Factual Statement.

At all times relevant to the information:

1. The Defendant was a corporation, incorporated under the laws of the State of Rhode Island and was in the business of procuring seafood from suppliers and selling that seafood to customers.

2. Legacy imported seafood products primarily from the North Atlantic Ocean/Barents Sea, an area designated by the Food and Agriculture Organization of the United Nations as "FAO 27," and resold it to retail and food service customers. FAO 27 encompasses a large area of the North Atlantic bounded by Greenland in the west, Russia in the east, and Spain in the south. Cod found and caught in FAO 27 belong to the species *gadus morhua*.

3. Legacy did business with FAO 27 fishing vessels that fillet and freeze product at sea, referred to as "Frozen-at-Sea" or "FAS." North Atlantic cod caught by Icelandic, Russian, or other vessels in FAO 27, is genetically identical.

4. Vessels, regardless of flag they fly, process FAS cod in substantially the same manner. FAS cod is distinguished in the industry from land-frozen or twice-frozen further processed product.

5. "Re-Packager" owned and operated a business in Fall River, Massachusetts, which was in the business of receiving fresh and frozen seafood from suppliers and re-packaging seafood for shipment to customers.

6. Between on or about July 26, 2011, and December 1, 2011, Legacy contracted with "Grocery Store," a national grocery store chain, to supply Grocery Store with codfish to sell at its retail stores. The Master Vendor Agreement between the defendant and Grocery Store provided that Legacy would supply Grocery Store with FAS "Icelandic Cod fillets."

7. Between on or about July 26, 2011, and December 1, 2011, Legacy and Re-packager entered into a business relationship wherein Legacy arranged for codfish to be delivered to Re-packager for re-packaging prior to its shipment to Grocery Store.

8. In or about July 2011, due to a shortage in the supply of Icelandic caught codfish, Legacy inquired with Grocery Store whether it would accept Russian-caught codfish as a substitute for Icelandic caught codfish. Specifically, Legacy proposed to Grocery Store that the label be changed from "Iceland Cod Fillets" to "Wild Caught North Atlantic Cod Fillets" so that Legacy could "utilize a much higher volume of raw materials and keep the price and supply more consistent."

9. Grocery Store responded "I would have to think hard on this. I am okay with Icelandic and definitely get too much negative feedback on any fish from Russia. Will let you know as soon as I ponder this."

10. In July, 2011, Re-packager began receiving FAS codfish labeled "Product of Russia," which Re-packager began processing to fulfill the Master Vendor Agreement with Grocery Store. Invoices provided to Grocery Store referred to the product as "North Atlantic Cod Fillets."

11. Between on or about July 26, 2011, and December 1, 2011, Legacy and Re-packager received approximately 122,328 pounds of Russian caught codfish, which was labeled "Product of Russia," with an approximate market value in excess of $750,000, and caused that product to be shipped in interstate commerce to Grocery Store labeled as a product of Iceland.

12. The parties acknowledge that specific intent to defraud or mislead is not an element of the charged conduct, and Legacy disputes that it acted with such intent.

## ACKNOWLEDGEMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with attorney representing Legacy Seafoods, Inc. I hereby acknowledge that it fully sets forth this agreement with the U.S. Attorney's Office for the District of Massachusetts and Environmental Crimes Section of the U.S. Department of Justice. I further state that no additional promises or representations have been made to Legacy Seafoods, Inc. by any official of the United States in connection with this matter. I understand the crime to which Legacy Seafoods, Inc. has agreed to plead guilty, the maximum penalties for those offenses and the Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to Legacy Seafoods, Inc. by its attorney. I have had sufficient time to meet and discuss the case with the attorney for Legacy Seafoods, Inc. We have discussed the charges against Legacy Seafoods, Inc., possible defenses Legacy Seafoods, Inc. might have, the terms of this Plea Agreement and whether Legacy Seafoods, Inc. should go to trial. I am entering into this Agreement on behalf of Legacy Seafoods, Inc. freely, voluntarily, and knowingly because Legacy Seafoods, Inc. is guilty of the offense to which it is pleading guilty and I believe this Agreement is in the best interest of Legacy Seafoods, Inc.

Robert B. Pacitti

Bob Pacitti
President, Legacy Seafoods, Inc.

Date: 10/3/2016

I certify that Bob Pacitti has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers to resolve this matter

John L. Brownlee, Esq.
Attorney for Defendant

CORPORATE ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Legacy Seafoods, Inc. The Board has read this letter of Agreement in its entirety and has discussed it fully with Legacy Seafood Inc.'s attorney. The Board acknowledges that this letter fully sets forth Legacy Seafood Inc.'s agreement with the United States. The Board further states that no additional promises or representations have been made to the Board by any officials of the United States in connection with this matter.

Bob Pacitti
President, Legacy Seafoods, Inc.

Authorized to enter into Agreement By Board of Directors

I certify that Legacy Seafood Inc.'s Board of Directors has authority to enter into this Plea Agreement and has (1) reviewed the Information in this case and the proposed Plea Agreement; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Defendant to plead guilty to the charges specified in the Plea Agreement; and (5) voted to authorize Bob Pacitti to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement.

John Brownlee, Esq.
Attorney for Defendant Corporation